IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Richard Cora,

        Plaintiff,

           v.

Amgen Manufacturing Limited,

        Defendant.

**Civil No. 20-1626 (GMM)**

## OPINION AND ORDER

Before the Court is Amgen Manufacturing Limited's ("AML") *Motion to Dismiss Amended Complaint* ("Motion to Dismiss"). (Docket No. 183). Therein, AML seeks to dismiss in its entirety Plaintiff Richard Cora's ("Cora") *Amended Complaint* at Docket No. 180 pursuant to Fed. R. Civ. P. 12(b)(1) and (6) ("Rule(b)(1)" and "Rule (b)(6)"). For the following reasons the Court **GRANTS IN PART AND DENIES IN PART** AML's Motion to Dismiss.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

For the purposes of this motion, the Court assumes the facts in the *Amended Complaint* are true. <u>A.G. ex rel. Maddox v. Elsevier, Inc.</u>, 732 F.3d 77, 79 (1st Cir. 2013). Cora is a retired U.S. Air Force ("USAF") veteran. *See* (Docket No. 180 at 3 ¶ 12). Throughout his service in the USAF, Cora acquired experience in the areas of engineering, capital projects management, contracting, logistics

---

[1] The facts herein derive from Cora's *Amended Complaint* (Docket No. 180) and are taken as true for the sole purposes of the Court's ruling on the Motion to Dismiss.

Civil No. 20-01626 (GMM)
Page -2-

and operational training, quality systems and compliance, resources management, processes development, and quality assurance. *See* (id. ¶ 13). Cora also worked for the U.S. Department of State as an Engineering and Technical Advisor and possesses "a degree equivalent to Mechanical /Aeronautical Engineer" from the Air Force Institute of Technology & Arts; a Master's Degree in International Business and Diplomacy from Troy State University; a Master's Degree in Business Administration and Management from Wilmington College; a Master's Degree in Accounting and Finance from Turabo University; and a Bachelor's Degree in Natural Sciences and Pre-Medicine from the University of Puerto Rico. *See* (id. ¶¶ 14-15). Furthermore, Cora has over 25 years of experience working in multinational companies, pharmaceuticals, and manufacturing. *See* (id. ¶ 16).

Back in the year 2002, Cora began applying for various positions that had been posted by AML. Cora averaged about 1.5 applications per week. *See* (id. ¶ 18). On or about August 2011, Cora was granted an interview with AML for the position of Senior Manufacturing Manager for Packaging. *See* (id. ¶ 19). Despite the interview, the position was closed, and Cora was told that nobody was selected for the job. *See* (Docket No. 180 at 5 ¶ 19). Although the position was re-opened shortly thereafter, Cora was not considered during that time. *See* (id.).

On or about December 2011, Cora's wife Wanda Román ("Román"), who is currently employed at AML in its Human Resources Department, emailed Edda Colón ("Colón"), another AML employee in the Human Resources Department, to keep her informed of Cora's employment applications. *See* (id. ¶ 20). On or about June 12, 2012, Colón asked Román to please see her to discuss Cora's application for a position he interviewed for in 2011. *See* (id. ¶ 21). On or about June 18, 2012, Román met with Colón, who informed her that Cora "was deemed too militaristic in his operation for the culture at AML, and that if he got more interviews in the future, he should stress how, despite his military service, he had learned to be more flexible." (Id. ¶ 22).

Around three years later, on February 5, 2015, Cora applied for the position of "Sr Program Leader Auto Req." *See* (id. ¶ 23). On or about February 26, 2015, Cora was given his second and final interview at AML for a Supply Chain Manager position. *See* (Docket No. 180 at 6 ¶ 24). On or about October 2015, Cora also applied for the Business Performance Senior Manager position. However, he was rejected since it was a corporate position. *See* (id. ¶ 25).

After many years of applying and being ignored or rejected, on or about January 11, 2016, Cora contacted Troy Knapp ("Knapp"), an AML corporate employee who works in Talent Acquisition and Veterans Career Advocacy. *See* (id. ¶ 26). Cora contacted Knapp to inquire about the status of a series of job applications he had

submitted in late 2015. *See* (id.). On or about January 14, 2016,
Cora contacted Knapp again to follow-up regarding a position in
Rhode Island. *See* (id. ¶ 27). On or about January 18, 2016, Cora
once again contacted Knapp "regarding an employment position in
Rhode Island and reiterated his urgency in finding employment."
(Id. ¶ 28).

On or around February 2, 2016, Knapp responded and informed
Cora that "he would not be considered for open positions at Amgen
(including AML) because of the threatening and inappropriate
behavior that he allegedly exhibited towards individuals during
the recruiting process." (Docket No. 180 at 6 ¶ 29). Knapp further
requested Cora not contact him via email or his personal phone.
*See* (id.).

The next day, on February 3, 2016, Cora filed a complaint
with the Office of Federal Contract Compliance Programs ("OFCCP")
of the U.S. Department of Labor claiming that AML had
"discriminated against him after failing to comply with the
affirmative action policy of the Vietnam Era Veteran's
Readjustment Act of 1974 (VEVRAA)." (Id. at 7 ¶ 31). Cora
specifically alleged that AML refused to hire him because of his
disabled veteran status and/or motivated by retaliatory animus;
that AML failed to publish job vacancies; and that AML did not
establish metrics to measure compliance with the affirmative
action program. *See* (id.). On June 28, 2017, the OFCCP determined

Civil No. 20-01626 (GMM)
Page -5-

that there was not "sufficient evidence to conclude that AML had discriminated against Cora or had otherwise violated VEVRAA." (Id. ¶ 35).

On or about May 2017, Cora attended the Hiring Heroes event at Fort Buchanan, which is a job fair for veterans. Bre Cameron ("Cameron"), Veterans Hiring Program Manager in Talent Acquisition at AML, wrote to Cora and confirmed that Cora "was still in consideration for his application [for the position of] Project Manager – Supply Chain." (Docket No. 180 at 7 ¶ 33).

Thereafter, on August 10, 2017, Cora filed an informal complaint with the Puerto Rico Veteran's Procurement Office ("OPV"), claiming that throughout various years "he had applied to hundreds of vacant positions in AML but he was never considered and/or never selected for any of the positions, and that said actions constituted discrimination against him due to his military status as combat veteran." (Id. at 7-8 ¶ 36).

On or about October 17, 2017, Cora contacted Cameron to follow-up on recent job application submissions and ask him for help applying for a Supply Chain Manager position. See (id. at 8 ¶ 40). On October 25, 2017, Cora followed up again. See (id. ¶ 41).

Shortly thereafter, on November 11, 2017, Knapp acknowledged Cora's recent application submissions and reiterated AML's "intent to not even consider him as well as their commitment to that

Civil No. 20-01626 (GMM)
Page -6-

decision." (Id. ¶ 42). Knapp also told Cora that he "had engaged in unprofessional and threatening behavior when interacting with individuals involved in the hiring process," (id.), and claimed he engaged in that same unprofessional manner during the Veterans Job Fair held in May 2017. *See* (Docket No. 180 at 8 ¶ 43). Again, on March 18, 2018, Knapp communicated with Cora regarding his communications with Cameron, and reiterated that AML would not consider Cora's applications for employment. *See* (Id. at 9 ¶ 47).

On June 28, 2018, the OPV determined that AML "had discriminated against [Cora] by reason of his military status in violation of PR Law 100 of 1959, as amended." (Id. ¶ 48). The OPV referred the case against AML to the Anti-Discrimination Unit ("ADU") of the Puerto Rico Department of Labor. *See* (id.).

On August 7, 2018 Cora applied for the positions of Senior Manager Process Development Drug Substance and Sr Specialist QA Reserve Sample Program with AML. *See* (id. at 9-10 ¶¶ 49-50).

That same month, on August 24, 2018, Cora filed with the ADU an administrative charge of discrimination based on age, disability, and military status. *See* (id. at 10 ¶ 51). The administrative charge was assigned no. UADAU18-309CH/12#H-2018-0399C.

On or about August 27, 2018, Knapp wrote to Cora again since he noticed that Cora kept applying for employment at AML. Knapp referenced previous communications where he had expressed AML's

"explicit desire not to even consider [Cora] for employment."
(Docket No. 180 at 10 ¶ 52). Knapp dated the previous
communications "2.2.16, 11.11.17, 3.16.18, and 8.18.18." (Id.).

On November 1, 2018, Cora filed with the Equal Employment
Opportunity Commission ("EEOC") a charge of discrimination "based
on age, religion, disability and military status discrimination
and retaliation," which was identified as Agency Charge No. 515-
2019-00062. (Id. ¶ 53). On December 2, 2018, Cora filed a formal
complaint against AML in the OPV, number QI-7-19-12-12-784. See
(id. ¶ 54).

On August 13, 2020, the EEOC issued its Dismissal and Notice
of Rights since it was "unable to conclude that the information
obtained established statutory violations." (Id. ¶ 55).

On December 13, 2023, the OPV concluded that Cora's complaint
had been proven and that "AML had violated Puerto Rico's 'New Bill
of Rights of the Puerto Rican Veteran of the XXI Century', PR Law
203 of 2007, as amended." (Id. at 11 ¶ 56).

By 2023, Cora "had applied to hundreds of positions at AML.
. ." (Id. ¶ 58). Cora filed the original complaint in the instant
case on November 10, 2020, as amended on June 25, 2024. See (Docket
Nos. 1; 180). Cora alleges violations to Title VII of the Civil
Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title
VII"), the Americans with Disabilities Act of 1990, as amended, 42
U.S.C. § 12101 et seq. ("ADA"), the Employment and Reemployment

Rights of Members of the Uniformed Services Act, as amended, 38 U.S.C. § 4301 *et seq*. ("USERRA"), and their Puerto Rico law counterparts. Particularly, the Puerto Rico Law 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 1, § 146 *et seq.* ("Law 100"), the Puerto Rico Law 44 of July 2, 1985, as amended, P.R. Laws Ann. tit. 1, § 501 *et seq.* ("Law 44"), and the Puerto Rico Law 115 of December 20, 1991, as amended, P.R. Laws Ann. tit. 29, § 194 *et seq.* ("Law 115). Specifically, the First and Second Causes of Action charge AML with discrimination in hiring based on Cora's "combat disabled veteran status" in violation to Title VII, the ADA, and Law 44. The Third and Fourth Causes of Action charge AML with retaliation based on Cora's protected actions, including the filing of charges with the ADU and EEOC, and the filing of charges with the OFCCP and the OPV, in violation to Title VII, the ADA, Law 44, and Law 115. The Fifth, Sixth, and Seventh Causes of Action charge AML with discrimination in initial hiring decisions and retaliation based on Cora's service in the U.S. Air Force in violation to USERRA and Law 100.

AML moved to dismiss the *Amended Complaint* (Docket No. 180) in that: first, Cora's Title VII and ADA claims are time-barred; second, Cora's *Amended Complaint* fails to state a claim of disability discrimination and/or retaliation pursuant to the ADA and Title VII; third, Cora failed to state a claim for discrimination in initial hiring decisions and/or retaliation

pursuant to USERRA; and <u>fourth</u>, Cora's state law claims should be dismissed to the same extent as their federal counterparts. Cora then filed his *Response in Opposition to Motion to Dismiss* (Docket No. 195) and AML subsequently replied at Docket No. 198. The Motion to Dismiss is thus fully briefed.

## II.  LEGAL STANDARD

<u>Fed. R. Civ. P. 12(b)(1) and (6)</u>

This Court "must narrowly construe jurisdictional grants," since we have limited jurisdiction. *See* <u>Ironshore Indem. Inc. v. Villa Marina Yacht Harbor Inc.</u>, 698 F.Supp.3d 233, 236 (D.P.R. 2023) (*citing* <u>Alicea-Rivera v. SIMED</u>, 12 F.Supp.2d 243, 245 (D.P.R. 1998)). When a court lacks subject-matter jurisdiction, an action can be dismissed pursuant to Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). It is the party invoking the federal court's jurisdiction that has the burden of demonstrating its existence. *See* <u>Ironshore Indem. Inc.</u>, 698 F.Supp.3d at 236 (*citing* <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995); <u>Droz-Serrano v. Caribbean Records Inc.</u>, 270 F.Supp.2d 217 (D.P.R. 2003)). Dismissal of the action is proper "if the facts alleged reveal a jurisdictional defect not otherwise remediable." <u>Torres v. Bella Vista Hosp., Inc.</u>, 523 F.Supp.2d 123, 132 (D.P.R. 2007); *See also* <u>Ironshore Indem. Inc.</u>, 698 F.Supp.3d at 236.

Notably, however, the compliance with a statute of limitations, is not a jurisdictional requirement. *See* <u>Zipes v.</u>

Civil No. 20-01626 (GMM)
Page -10-

*Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982); *see also*
*Martinez-Rivera v. Commonwealth of Puerto Rico*, 812 F.3d 69, 73
(1st Cir. 2016) ("the judge. . .decided the statute-of-limitations
and exhaustion issues as if they implicated the court's subject-
matter jurisdiction. . .we have our doubts. As a general matter,
statute of limitations are affirmative defenses rather than
jurisdictional bars.") (*citing* Bowles v. Russell, 551 U.S. 205,
218-19 (2007)). Thus, defenses based on a statute of limitations
are more properly analyzed under Rule 12(b)(6). *See* Martinez-
Rivera, 812 F.3d at 73.

Pursuant to Rule 12(b)(6), the Court can dismiss an action if
it fails to state a claim upon which relief can be granted. *See*
Fed. R. Civ. P. 12(b)(6). Dismissal is proper when "it clearly
appears, according to the facts alleged, that the plaintiff cannot
recover on any viable theory." Gonzalez-Morales v. Hernandez-
Arencibia, 221 F.3d 45, 48 (1st Cir. 2000) (*quoting* Correa-Martinez
v. Arrillaga-Belendez, 903 F.2d 49. 52 (1st Cir. 1990)); *see also*
Bella Vista Hosp., Inc., 423 F.Supp.2d at 132. To survive a Rule
12(b)(6) motion, the complainant must allege "enough facts to state
a claim to relief that is plausible on its face." Bell Atl. Corp.
v. Twombly, 550 U.S. 544, 570 (2007).

In any case, the distinction between Rule 12(b)(1) and Rule
12(b)(6) is not crucial in this case. Especially, since in both
Rule 12(b)(1) and (6) motions, the Court must "credit the

plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (*citing* Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001)). Indeed, motions brought under Rule 12(b)(1) are subject to the same standard as Rule 12(b)(6) motions. S*ee* Ironshore Indem. Inc., 698 F.Supp.3d at 236 ("Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions.") (*citing* Negrón-Gaztambide v. Hernández-Torres, 35 F.3d 25, 27 (1st Cir. 1994)); Torres Maysonet v. Drillex, S.E., 229 F.Supp.2d 105, 107 (D.P.R. 2002); *see also* Novak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1888 (2d Cir. 1996) ("In most circumstances, it makes little practical difference whether the district court correctly labels its dismissal of an action as one for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6)."). What is certain is that the Court must exclude "bald conclusions, unrelieved rhetoric, and pejorative epithets" from its analysis. *See* Viqueira v. First Bank, 140 F.3d 12, 15 (1st Cir. 1998).

### III. ANALYSIS

A.   Cora's Title VII and ADA Claims are Not Entirely Time-Barred

The Court will first address AML's contention that Cora's Title VII and ADA claims are time-barred.

Civil No. 20-01626 (GMM)
Page -12-

According to Title VII's enforcement procedures, 42 U.S.C. § 2000e-5, which the ADA adopted at 42 U.S.C. § 12117(a), Cora needed to file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred", or within three hundred days if "the person aggrieved has initially institutionalized proceedings with [an authorized] State or local agency" or "within thirty days after receiving notice that the State or local agency has terminated the proceedings with a State or local agency, whichever is earlier." Siaca v. Autoridad de Acueductos y Alcantarillados de Puerto Rico, 160 F.Supp.2d 188, 195 (D.P.R. 2001)(*quoting* 42 U.S.C. § 2000e-5(e)). Doing so would give "prompt notice [to AML] of claims and [would] create an opportunity for early conciliation." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996). To be sure, the timely filing of an EEOC charge is not a jurisdictional prerequisite to bringing a Title VII or ADA suit in federal court. However, it is still a requirement that Cora needs to comply with. *See* Zipes, 455 U.S. at 392-93; *see also* Siaca, 160 F.Supp.2d at 195.

Cora posits that he filed an administrative charge with the Puerto Rico ADU/EEOC[2] on August 24, 2018 based on age, disability and military status. *See* (Docket Nos. 180 at 10 ¶ 51; 195 at 12).

---

[2] "In Puerto Rico, a charged filed with the ADU serves as a simultaneous filing with the EEOC." Franceschi-Vázquez v. CVS Pharmacy, 183 F.Supp.3d 333, 338 n.3 (D.P.R. 2016) (*citing* Rivera-Rivera v. Thyssenkrupp Elevator Corp., Civil No. 14-1478 (SEC), 2015 WL 5719799, at *2 (D.P.R. Sept. 29, 2015)).

There, he argued that AML conducted a pattern of discrimination, defamation, and retaliation due to his "disabled combat veteran status." *See* (Docket No. 180 at 10 ¶ 51). The administrative charge was assigned no. UADAU18-309CH/12#H-2018-0399C ("First EEOC Charge"). *See* (id.). Cora filed a second EEOC charge on November 1, 2018. He alleged that AML discriminated against him based on age, religion, disability, and military status discrimination and retaliation. *See* (id. ¶ 53; Docket No. 195 at 12). The second EEOC charge was assigned no. 515-2019-00062 ("Second EEOC Charge"). *See* (id. ¶ 53; Docket No. 195 at 12). Accordingly, as to the First EEOC Charge, the actionable discriminatory acts are those that occurred on or after October 28, 2017. Cora admits as such. *See* (Docket No. 195 at 12). As to the Second EEOC Charge, the actionable discriminatory acts are those that occurred on or after January 5, 2018.

Be that as it may, AML focuses on a third date, February 2, 2016; the date which AML informed Cora that "because of the threatening and inappropriate behavior" that Cora exhibited during the recruiting process "he would not be considered for open positions at [AML]." (Docket Nos. 180 at 5-6 ¶¶ 18-19; 183 at 10). In its view, AML considered Cora for employment up until February 2, 2016, when AML essentially decided to refuse to hire Cora *in perpetuum*. Therefore, AML argues that its subsequent decisions not to consider Cora, simply reiterated its February 2, 2016- decision

and cannot be considered "new" actionable discriminatory decisions. In other words, the last "applicable statute of limitations was triggered on February 2, 2016," and thus, Cora's Title VII and ADA claims must be dismissed. (Docket No. 183 at 12). *At this stage*, the Court disagrees with AML's theory that February 2, 2016, is the date in which Cora's Title VII and ADA claims accrued.

The Supreme Court of the United States held in <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002) that "[d]iscrete acts such as termination, failure to promote, denial of transfer, *or refusal to hire. . .*" constitute separate actionable unlawful employment practices. *See* <u>Morgan</u>, 536 U.S. at 114 (emphasis added). A claimant must thus file a charge within the 180- or 300-day time period after the occurrence of each discrete discriminatory act, even when the acts are related to each other. *See* <u>id.</u> at 102 ("discrete discriminatory acts are not actionable if time barred, *even when they are related to acts alleged in timely filed charges*." (emphasis added)); *see also* <u>Lugo v. Avon Products, Inc.</u>, 777 F.Supp.2d 275, 287 (D.P.R. 2011). Of particular importance here, is the Supreme Court's ruling that "[t]he existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts *so long as the acts are*

*independently discriminatory and charges addressing those acts are themselves timely filed*." <u>Morgan</u>, 536 U.S. at 113 (emphasis added).

There is no question that AML's February 2, 2016-decision to refuse to hire Cora constitutes a discrete act. There is also no question that the proverbial ship sailed for Cora as to that act since it occurred before the cutoff-dates of October 28, 2017, and January 5, 2018. However, at this stage, the record is not sufficiently developed to determine whether AML's future refusals-to-hire are independently discriminatory from the February 2, 2016-act. The Court also notes that Cora is allowed to use the "prior acts as background evidence to support a timely claim." <u>Id.</u>

Based on the above, the Court **GRANTS** AML's Motion to Dismiss **IN PART** as to its time-barred argument. The discrete discriminatory acts alleged by Cora prior to October 28, 2017 are no longer actionable.

B.    <u>Cora's Failure to State a Claim for Discrimination and/or Retaliation pursuant to Title VII</u>

The Court, accepting as true all well-pleaded factual claims, and indulging all reasonable inferences in Cora's favor, finds that Cora failed to plead enough facts to establish a discrimination and retaliation cause of action under Title VII for those acts that occurred after October 28, 2017.

Title VII prohibits an employer from failing or refusing "to hire. . .or otherwise to discriminate against any individual with

Civil No. 20-01626 (GMM)
Page -16-

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . ." 42 U.S.C. § 2000e-2(a)(1). However, veterans are not a protected class under Title VII and the statute leaves no room for a veteran preference.

Here, Cora alleges that AML discriminated "in hiring based on [his] *combat disabled veteran status*," and then retaliated based on Cora's "filing of charges with ADU and EEOC, and the filing of charges with the OFCCP and the OPV. . ." (Docket No. 180 at 11 ¶¶ 60, 63) (emphasis added). Cora's status as a "combat disabled veteran" is not a protected category under Title VII. Therefore, Cora cannot successfully prove that AML committed an unlawful practice under Title VII. Cora's Title VII discrimination claim based on his "combat disabled veteran status" is dismissed.

Title VII also prohibits an employer from discriminating "against [an applicant for employment]. . .because [the applicant for employment] has opposed any practice made unlawful employment practice by [Title VII], or because [the applicant for employment] has made a charge. . .or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico, 743 F.3d 278, 284 (1st Cir. 2014) (*quoting* 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of retaliation, Cora must show: (1) that he engaged in a protected conduct; (2) he suffered

an adverse employment action; and (3) that a "causal nexus exists between the protected [conduct] and the adverse action." Garayalde-Rijo v. Municipality of Carolina, 747 F.3d 15, 24 (1st Cir. 2014) (quoting Ponte v. Steelcase Inc., 741 F.3d 310, 321 (1st Cir. 2014)). To be sure, the Supreme Court in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) held, in the discrimination context, that the prima facie standard is an evidentiary, not a pleading standard. See Swierkiewicz, 534 U.S. at 512; see also Blomker v. Jewell, 831 F.3d 1051, 1056 (8th Cir. 2016) ("the prima facie model is an evidentiary, not a pleading, standard.") (quoting Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013)). However, the "elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit" and "may be used as a prism to shed light upon the plausibility of the claim." Rodriguez-Reyes, 711 F.3d at 54.

Here, Cora alleges that "[o]n November 01, 2018, [he] filed with the EEOC a charge of discrimination based on age, religion, disability, and military status discrimination and retaliation, Agency Charge No. 515-2019-00062." (Docket No. 180 at 10 ¶ 53). Filing a charge with the EEOC based on Cora's religion is a protected activity under Title VII. See 42 U.S.C. § 2000e-3(a). If AML refused to hire Cora as a result of his EEOC charge, then AML would be on the hook for a retaliation cause of action under Title VII. But Cora did not allege that he applied to any particular

Civil No. 20-01626 (GMM)
Page -18-

role after the filing of the November 1, 2018-EEOC charge, nor did he reference any particular refusal to hire on the hands of AML after he filed the charge. Every single allegation in the *Amended Complaint* was of events *before* he filed the November 1, 2018-EEOC charge. Accordingly, Cora has not plausibly plead "a connection between the [refusal to hire] and his engagement in protected activity" nor can the Court make a minimal inference in this regard. Vega v. Hempstead Union Free School Dist, 801 F.3d 72, 90 (2d Cir. 2015) (discussing pleading standards in a discrimination case).

Based on the above, the Court **GRANTS** AML's Motion to Dismiss in this regard.

C.    Cora's Claim of Disability Discrimination and Retaliation pursuant to the ADA and Puerto Rico's Law No. 44

The Court, accepting as true all well-pleaded factual claims, and indulging all reasonable inferences in Cora's favor, finds that Cora failed to plead enough facts to establish a discrimination cause of action under the ADA[3] and Law No. 44.

As a preliminary matter, "the elements of proof for a claim under Law 44 are essentially the same as those for establishing a claim under the ADA." Salgado-Candelario v. Ericsson Caribbean,

---

[3] Notably, the First Circuit has decreed that because the ADA and Title VII are related, "guidance on the proper analysis of [an] ADA retaliation claim is found in Title VII cases." *See* Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997). The Court may thus refer to Title VII cases while conducting its analysis.

Civil No. 20-01626 (GMM)
Page -19-

Inc., 614 F.Supp.2d 151, 175 (D.P.R. 2008) ("Law 44 is Puerto
Rico's counterpart to the ADA.") (collecting cases); *see also*
Lahens v. AT&T Mobility Puerto Rico, Inc., 28 F.4th 325, 338 (1st
Cir. 2022). Consequently, if Cora's ADA discrimination claim
fails, his Law 44 discrimination claim will likewise fail.
Furthermore, there is no retaliation provision under Law 44. *See*
Cortés-Luna v. Bristol-Myers Squibb Company, 456 F.Supp.3d 342,
345 (D.P.R. 2020) (collecting cases).

The ADA prohibits an employer from discriminating "against a
qualified individual on the basis of disability in regard to job
application procedures, the hiring, advancement, or discharge of
employees, employee compensation, job training, and other terms,
conditions, and privileges of employment." 42 U.S.C. § 12112(a).
As such, to plausibly state a claim of disability discrimination
under the ADA, Cora must allege, among other things, that he was
"disabled or perceived to be disabled within the meaning of the
ADA." *See* Johnson v. Mount Sinai Hospital Group, Inc., No. 23-466,
2024 WL 3289475 (2d Cir. July 3, 2024) (*citing* Capobianco v. City
of New York, 422 F.3d 47, 56 (2d Cir. 2005)); *see also* Roman-
Oliveras v. Puerto Rico Elec. Power Authority, 655 F.3d 43, 48
(1st Cir. 2011). The ADA defines "disability" as "(A) a physical
or mental impairment that substantially limits one or more major
life activities of such individual; (B) a record of such an

Civil No. 20-01626 (GMM)
Page -20-

impairment; or (C) being regarded as having such an impairment .

. .” *See* 42 U.S.C. § 12102(1).

Cora, who is alleging discrimination based on an actual disability, must necessarily allege a specific disability. *See* Tate v. SCR Medical Transp., 809 F.3d 343, 354 (7th Cir. 2015); *see also* Swierkiewicz, 534 U.S. 506 (holding that an employment discrimination complaint needs to give respondent a “fair notice” of the basis of petitioner’s claim. In doing so, petitioner’s complaint need only contain a “short and plain statement of the claim showing that the pleader is entitled to relief.”). But Cora failed to allege facts sufficient to establish that he was disabled, or impaired, under *any* of the three statutory definitions. Indeed, Cora merely stated that he “is a service-connected disabled combat veteran”. (Docket No. 180 at 3 ¶ 12). Cora did not allege a particular physical or mental impairment, nor that the physical or mental impairment substantially limits one or more of his major life activities. Cora’s allegations do not even speculatively, let alone plausibly, infer that AML believed him to be disabled. Therefore, Cora’s “disabled combat veteran” allegation does not give AML “fair notice” of his ADA discrimination claim and the grounds upon which it rests, and it must be dismissed. *See generally* Swierkiewicz, 534 U.S. 506; *see also* Tate, 809 F.3d at 346 (“The defendant in a disability discrimination suit does not have fair notice when the plaintiff

fails to identify his disability."); Olivarez v. T-mobile USA,
Incorporated, 997 F.3d 595, 600-601 (5th Cir. 2021) ("A claim of
discrimination under the ADA requires a plaintiff to allege a
disability, that he was qualified for his position, and that he
suffered an adverse employment action because of his disability.
. .At most, Olivarez made a conclusory allegation that T-Mobile
and Broadspire 'discriminated against [Olivarez] based on [a]
disability."); Bakra v. RST Marketing, No. 6:19-CV-00033, 2019 WL
3459251, at *2 (W.D. Va. July 31, 2019) ("[M]erely stating that
one has a disability and suffered discrimination does not raise a
right to relief above the speculative level."); Waddle v. Unum
Grp., No. 1:17-CV-97, 2017 WL 11610732, at *4 (E.D. Tenn. Oct. 25,
2017)("without identifying her disability, it is impossible to
determine whether the alleged disability falls within the
definition of disability under the ADA."); Davenport v. Sugar
Mountain Retreat, Inc., No. 09-CV-0535-CVE-TLW, 2009 WL 3415240,
at *1 (N.D. Okla. Oct. 16, 2009) (granting motion to dismiss
because plaintiff asserted only that he was a "person with
disabilities and/or handicapped within the meaning of the
[ADA].").

The ADA also prohibits retaliation. Specifically, the ADA
dictates that "[n]o person shall discriminate against any
individual because such individual has opposed any act or practice
made unlawful by this chapter or because such individual made a

charge. . .or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To establish a claim of retaliation pursuant to the ADA, Cora must eventually show "(1) that he engaged in protected conduct, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the protected conduct and the adverse employment action." Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 35 (1st Cir. 2010) (*citing* Soileau, 105 F.3d at 16).

In the *Amended Complaint*, the only conduct that can plausibly be considered protected[4] under the ADA are Cora's filing of charges before the ADU on August 24, 2018, and the EEOC on November 1, 2018. *See* (Docket No. 180 at 10 ¶¶ 51, 53). These filings, which are the only filings through which Cora allegedly charges discrimination based on a disability, occurred after Cora applied for the position of "Sr Specialist QA Reserve Sample Program" within AML, on August 7, 2018. *See* (id. ¶ 50); *see also* Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014) ("The ADA is not, however, a catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA.") (*citing* 42 U.S.C. § 12203(a)).

---

[4] The Court notes that Cora could satisfy this element by establishing "'that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated" the ADA." Sharikov v. Philips Medical Systems MR, Inc., 103 F.4th 159, 170 (2d Cir. 2024) (*quoting* Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)).

Civil No. 20-01626 (GMM)
Page -23-

According to Cora, and indulging all reasonable inferences in his favor, he allegedly suffered retaliation on August 27, 2018, merely three days after filing his charge before the ADU, when Knapp communicated to Cora "his knowledge that [Cora] was still applying for employment at [AML]," and Knapp reiterated past decisions or communications to not even consider Cora for employment.[5] *See* (Docket No. 180 at 10 ¶ 52). Inferring *at this stage* that AML's refusal to hire Cora on August 27, 2018, is independent from its refusal to hire decision on February 2, 2016, the Court finds that Cora has plausibly pled a retaliation cause of action under the ADA.

Based on the foregoing, the Court **GRANTS IN PART** AML's Motion to Dismiss.

D.  Cora States an USERRA and Law 100 Discrimination Claim and an USERRA Retaliation Claim

USERRA and Law 100 prohibit discrimination based on a plaintiff's military status. *See* 38 U.S.C. § 4301(a); P.R. Laws Ann. tit. 1, § 146. Veterans, or those who have performed service in a uniformed service, are expressly protected under USERRA and Law 100. *See* 38 U.S.C. § 4311(a); P.R. Laws Ann. tit. 1, § 146 ("Any employer who. . .fails or refuses to hire or rehire a person.

---

[5] To prove a causal connection between the protected activity, Cora may either use direct evidence of retaliatory animus or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment." Sharikov, 103 F.4th at 170 (*quoting* Natofsky v. City of New York, 921 F.3d 337, 347 (2d Cir. 2019)).

. .on the grounds of. . .being a servicemember, ex-servicemember, serving or having served in the United States Armed Forces or holding veteran status [shall] incur in civil liability. . ."); *see also* Angiuoni v. Town of Billerica, Civil No. 11-11661, 2012 WL 12910268, at *5 (D. Mass July 16, 2012). For a veteran to establish a claim under USERRA, "he or she must show that his or her [veteran] status was the 'motivating factor' in his or her employer's discriminatory action. . .even if the employee's military status was not the sole factor in the employer's decision." Rivera-Cartagena v. Wal-Mart Puerto Rico, Inc., 802 F.Supp.2d 324, 342 (D.P.R. 2011) (*citing* Baerga-Castro v. Wyeth Pharm., Inc., No. 08-1014, 2009 WL 2871148, at *10 (D.P.R. Sept. 3, 2009); O'Neil v. Putnam Retail Mgmt., LLP, 407 F.Supp.2d 310, 316 (D. Mass. 2005). Indulging all reasonable inferences in Cora's favor, at this stage, the Court finds that the *Amended Complaint* has plausibly stated a discrimination claim premised on Cora's past military service under USERRA and Law 100 as to allow discovery in this regard.

USERRA also prohibits an employer from taking "any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this

chapter, or (4) has exercised a right provided for in this chapter." 38 U.S.C. § 4311(b); *see also* <u>Baerga-Castro v. Wyeth Pharmaceuticals</u>, Civil No. 08-1014 (GAG), 2009 WL 2871148, at *11 (D.P.R. Sept. 3, 2009). Accordingly, Cora needs to show the following elements to succeed in his retaliation cause of action pursuant to USERRA: "(1) that he engaged in protected activity; (2) that [AML] took an adverse employment action against him; and (3) that [Cora's] protected activity was a motivating factor in the employer's action." <u>Baerga-Castro</u>, 2009 WL 2871148, at *11 (*citing* <u>Francis v. Booz, Allen & Hamilton, Inc.</u>, 452 F.3d 299, 309 (4th Cir. 2006)). Taking those elements into consideration, and indulging all reasonable inferences in Cora's favor, the Court finds that the Cora has plausibly pled a retaliation cause of action under USERRA. Consequently, the Motion to Dismiss is **DENIED** in this regard.

E.    <u>Law 115</u>

Finally, Cora also brings a claim for retaliation pursuant to Law 115. Although it is true, as AML points out, that courts have "consistently treated a claim under [Law] 115 the same as a claim pursuant to Title VII's antiretaliation provision," <u>Wishing v. Banco Santander de P.R.</u>, 254 F.Supp.3d 271, 277 (D.P.R. 2015), it is no less true that Title VII's coverage appears to be broader than Law 115. *See* <u>Velez v. Janssen Ortho, LLC</u>, 467 F.3d 802, 809 (1st Cir. 2006). Notably, Law 115's wording suggests that it only

protects actual employees, unlike Title VII's retaliation provisions that include "applicants for employment." *Compare* P.R. Laws Ann. tit. 29, § 194a(a) ("No employer may terminate, threaten, or discriminate against an employee with regards to the term, conditions, compensation, location, benefits, or privileges of the employment should the employee [engage in protected activity].") *with* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment. . .because he has [engaged in protected activity].")). The Court notes, however, that neither party brought this issue before the Court, so it need not decide. Cora's Law 115 claim survives the pleading stage.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** AML's Motion to Dismiss. Specifically,

1. The discrete discriminatory acts alleged by Cora prior to October 28, 2017 **are no longer actionable.**

2. Cora's First and Second Causes of Action premised on disability discrimination pursuant to Title VII, the ADA, and Law 44 are **DISMISSED WITH PREJUDICE.**

3. Cora's Third and Fourth Causes of Action are **DISMISSED WITH PREJUDICE** as it pertains to Cora's claims of retaliation pursuant to Title VII and Law 44. Cora's Third and Fourth Causes of Action as they relate to retaliation pursuant to the ADA and Law 115 remain.

4.  Cora's Fifth, Sixth, and Seventh Causes of Action premised on discrimination and retaliation pursuant to USERRA and Law 100 remain.

IT IS SO ORDERED.

In San Juan, Puerto Rico, January 23, 2025.


s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
United States District Judge